United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 21, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 02-41461**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**BEATRICE B. MARTINEZ,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court
for the Southern District of Texas
(C-02-CR-96-1-S)**

_____

Before KING, Chief Judge, and HIGGINBOTHAM and BARKSDALE, Circuit
Judges.

PER CURIAM:[*]

Beatrice Martinez appeals her convictions for failing to disclose an event affecting her right to Supplemental Security Income, in violation of 42 U.S.C. § 1383a(a)(3)(A), and embezzlement from a federal agency, in violation of 18 U.S.C. § 641. At issue is whether the evidence was sufficient for each conviction. **AFFIRMED IN PART; VACATED IN PART; REMANDED.**

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

In 1989, 1990, and April 1992, Martinez applied to the Social Security Administration (SSA) for Supplemental Security Income (SSI). On each occasion, her application was rejected because her husband's income was too high.

Martinez again applied in July 1992 (prior to that application, an Administrative Law Judge had determined Martinez was disabled). That application was again denied due to Martinez' husband's income.

On 21 April 1995, when Martinez filed a fifth SSI application, she stated to the SSA that her husband had moved out of their house on 1 April. Although she stated the husband would continue to pay bills, her resulting loss of income qualified her for SSI. She began to receive it on 1 May. During the earlier 21 April meeting, Vicent, an SSA representative, had explained to Martinez that she could *not* qualify for April benefits because her husband had lived in the house for one day that month.

In July 1995, Vicent asked Martinez whether her circumstances had changed *since 1 May*. No record exists of Martinez' response (file was lost), but the SSA took no steps then to terminate her benefits. Martinez continued to receive SSI.

In October 2000, Hurd, another SSA representative, spoke with Martinez to review her SSI eligibility. Martinez told Hurd: her husband had moved back into their house on the weekend following

her April 1995 application (before 1 May); they had co-habitated since then; and, during her July 1995 conversation with Vicent, Martinez had told Vicent about her husband's return.

Martinez was indicted for: (1) failing to disclose an event affecting her right to SSI; and (2) embezzlement. The Government presented, *inter alia*, Vicent's testimony that: although she did not specifically remember doing so with Martinez, it was Vicent's *standard practice* to tell applicants they must report any change of circumstance; and she would have terminated Martinez' eligibility had Martinez told her in July 1995 about her husband's return. Martinez did not testify; nor did she call any witnesses. A jury found her guilty on both counts; she was sentenced, *inter alia*, to five-years probation and restitution in the amount of the SSI paid — $21,476.60.

## II.

Martinez maintains the evidence was insufficient to support either the failure-to-disclose or embezzlement conviction. In reviewing sufficiency of the evidence, we determine, after viewing all the evidence and reasonable inferences drawn therefrom in the light most favorable to the verdict, whether a reasonable juror could find the evidence established guilt beyond a reasonable doubt. *E.g.*, **United States v. Bieganowski**, 313 F.3d 264, 275 (5th Cir. 2002), *cert. denied*, 123 S. Ct. 1956 (2003). "[I]n a case depending on circumstantial evidence[,] if 'the evidence viewed in

3

the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence', a defendant is entitled to a judgment of acquittal". *Id*. (quoting *United States v. Brown*, 186 F.3d 661, 664 (5th Cir. 1999)).

## A.

To convict under § 1383a(a)(3)(A), "the government must show ... the defendant knew [s]he was legally obligated to disclose certain information". *United States v. Phillips*, 600 F.2d 535, 536 (5th Cir. 1979) (construing then 42 U.S.C. § 408(d) which is similar to § 1383a(a)(3)(A)). Moreover, the Government obviously must prove the defendant failed to disclose that information. Finally, it must prove "the defendant knew that by withholding the information [s]he would receive greater payments than [s]he was entitled to". *Id*. Martinez contends the Government's evidence did not establish any of these elements.

## 1.

Vicent testified that she customarily advised SSI applicants of their obligation to report changes of income and whether anyone moved into, or out of, their house. Although Vicent could not specifically remember advising Martinez of that obligation, there was no testimony indicating Martinez' application was an exception to the customary practice. Based on Vicent's uncontroverted testimony, a reasonable juror could find, beyond a reasonable

4

doubt, that Martinez had been told of her obligation to report her husband's return.

2.

Vicent also testified that, had Martinez told her in July 1995 that her husband had returned, Vicent would have taken action to avoid Martinez' being overpaid. Yet, no record was made and Martinez continued to receive benefits.

Hurd testified about her 2000 conversation with Martinez, during which Martinez had told Hurd that she had told Vicent that her husband returned immediately after the April 1995 application. Martinez seeks benefit from this testimony. However, viewing credibility choices in the light most favorable to the verdict, *see e.g.*, **United States v. Griffin**, 324 F.3d 330, 356 (5th Cir. 2003), it was not unreasonable for the jury to reject Martinez' self-serving statement to Hurd.

Martinez also points out that: the lost July 1995 review asked Martinez whether anyone had moved into her house *as of* 1 May 1995; and Martinez' husband had returned prior to that date. While this may show Martinez did not affirmatively lie to Vicent in July 1995, it does not bear on Martinez' failure otherwise to disclose that information.

Restated, when viewed in the light most favorable to the verdict, a reasonable juror could find, beyond a reasonable doubt, that Vicent's testimony about SSA's standard procedures was

5

sufficient to show that Martinez failed to disclose her husband's return.

3.

Having concluded Martinez was aware of her obligation to disclose her husband's return and failed to do so, a reasonable juror could find, beyond a reasonable doubt, that the failure resulted from Martinez' fraudulent intent. As noted, before her successful application in April 1995, Martinez had applied for SSI on four occasions. Each time, she was denied SSI *because* her husband's income was too high. Only when her husband was no longer in the house was her application accepted. The record is unclear as to what Martinez was told about the reasons for the previous denials; however, Assistant District Manager Garcia testified that SSI applications would be scrutinized to determine if applicants met the "need" requirement for SSI before they were examined to determine whether they were disabled. As noted, Martinez was denied SSI at this preliminary stage for her first three applications. It is reasonable for a jury to conclude that Martinez understood the change in circumstances to have driven the April 1995 SSI award.

Moreover, Martinez stated to Vicent during their April 1995 conversation: "I understand that I am not eligible for April 1995 [benefits] because of [my husband's] income". Because of the evidence showing Martinez' knowledge of the adverse effect her

6

husband's income had on her SSI applications, a reasonable juror could find, beyond a reasonable doubt, that Martinez' failure to disclose that information to the SSA was based on fraudulent intent.

Martinez contends that such intent is undercut by the fact that she was referred to the SSA Agent in April 1995 and did not seek SSI. This is of no moment. Assuming Martinez had no fraudulent intent when she applied for SSI in April 1995 (her husband having left), her fraudulent intent concerns her *subsequent* failure to disclose his return.

### B.

Embezzlement is: "the fraudulent appropriation of property by a person to whom such property has been intrusted, or into whose hands it has lawfully come". *Moore v. United States*, 160 U.S. 268, 269 (1895). It is distinguished from larceny by the fact that the wrongfully taken property was within the defendant's lawful control. *See United States v. Sayklay*, 542 F.2d 942, 944 (5th Cir. 1976). As described *supra*, the Government's evidence showed that Martinez' possession of SSI, from May 1995 forward, was not lawful by virtue of her failing to disclose her husband's return in late April 1995.

Accordingly, the embezzlement and "failure to disclose" counts are mutually exclusive because Martinez could not have lawfully possessed (and therefore embezzled) the very benefits that she had

7

fraudulently obtained.  The Government contends Martinez lawfully possessed the checks merely because it sent them to her.  Yet, the Government's theory of Martinez' failure to disclose shows that her receipt was fraudulent, *not lawful*.  *See* **id**. ("Unlike funds in possession of a bank president or a teller, the funds [defendant] stole were not entrusted to her in any capacity whatever for the use and benefit of [her employer].").

III.

For the foregoing reasons, Martinez' convictions are **AFFIRMED IN PART** and **VACATED IN PART**.  This case is remanded to district court for resentencing consistent with this opinion.

***AFFIRMED IN PART; VACATED IN PART; REMANDED***